We're going to move now to appeal 25-1643 Quiroz-Bardales v. Bondi. Ms. Aguilar, we'll begin with you for argument on behalf of the appellant. Thank you, Your Honor. Good morning, and may it please the court. We are here on an immigration asylum claim. My name is Erin Aguilar. I represent Ms. Quiroz-Bardales and her two daughters, who are riders on her original asylum claim. The immigration judge found her testimony was credible when she spoke of an attack that she suffered, and that her membership in her longtime partner's family was an established cognizable social group. These are uncontested facts. But the immigration judge subsequently denied relief by discounting her testimony as incidental. That contradiction is a legal error that this court's precedent holds and requires a remand. Immigration law for an asylum application requires that when you have a family group, there must be a nexus, a tie between your membership to that family and the attack or persecution that you suffered. Here, Ms. Quiroz-Bardales was approached in the street by two men in masks who were dressed in black. Before they attacked her, they asked where her husband was. They knew who she was. They knew who she was in relationship to her husband. They said that they had issues with her husband, and then they threatened her and the daughter that she had with her partner. This all happened before she was attacked. Her testimony was found credible by the immigration judge, and her testimony is not contested by my opposing counsel. This testimony and credibility speaking to what the attackers said and how they approached her establishes the connection between her as a member of the family group and the attack that she subsequently suffered at their hands. She was not a victim of random crime. This was not merely a crime of opportunity where they banged her over the head and wanted her purse. They approached her specifically because of who she was to her long-time partner, Mr. Barahona, and that should have established the nexus. The fact that the immigration judge took her testimony as credible, but then proceeded to disregard this testimony and hold that she was only a victim of crime is the contradiction that we are asking your honors would remand so that the immigration judge can reissue the decision consistent with the nexus requirement. So do you agree that nexus is the only issue before us given the scope of the BIA's decision? Yes, this is the dispositive issue. If there is no nexus, then none of her other questions about the severity of her persecution or whether or not she could relocate within the country, those are irrelevant. So the question is, was she attacked because of her relationship to her long-time partner? And that is the nexus. If that connection is established as to the reason for the attack, that is what we are arguing should have been the determination of the immigration judge. What evidence was there in the record of animus to the family as a family per se, not about getting their money, but an underlying familial dispute to establish that she was attacked on account of her membership in this family group? Yes, her testimony, which was consistent throughout and the judge did find credible, was that they approached her and the first thing that they asked her was where her partner was. And he had actually fled the country after his own attack several years prior. He was no longer in Honduras at the time. The family had moved after his attack to live with her mother in order to protect their young children. So after he had fled the country and she had relocated with her mother, these men found her. They knew who she was. They knew where she lived. They asked about her husband the first thing out of their mouth. They said that they had issues with him that were not very clear in this interaction. But then they threatened her and her daughter. After the attack, this animosity continued. They were seen frequently outside of the house that she was living at with her young children where her mother was. And even after Ms. Barbales fled to the United States, they continued to be outside of her mother's house until her mother moved about an hour away. And after that, they have, as of right now, not attempted to find her or her husband or her partner. Would you like to reserve the remainder of your time? Yes, Your Honors. Thank you. Very good. Thank you, Ms. Aguilar. Mr. Hughbanks, we'll move to you now for argument on behalf of the appellee. Thank you. Excuse me. Thank you, Your Honors. And may it please the Court. The petition for review should be denied here because ultimately petitioner has failed to present evidence compelling the conclusion that one central reason that unknown criminals robbed and assaulted her was because of her familiar relationship to her romantic partner. In other words, the record contains substantial evidence that what these unknown criminals were motivated by was their ill-gotten pecuniary interest and, as the Board put it, to further their criminal enterprise. They did mention his name, though. Yes, Your Honor. Does that take this to a different level? No, Your Honor, it does not because, again, they did rob her on this occasion, and that really demonstrates what their underlying motivation was. They robbed the romantic partner in 2015, demonstrating that what they wanted, they had apparently found out it was a biweekly payday, so they wanted money. In 2018, they robbed the lead petitioner in this case, demonstrating what their underlying motivation was here. And that separates this case from cases where this Court has found the requisite nexus or that the persecutors had a one central reason motivation towards the family unit. Because if we look at WGA versus Sessions, there wasn't this pecuniary motivation. What happened was the brother defected from one of the major criminal gangs in, I believe, El Salvador, and they tried to engage in a series of retribution against the family. And then Mejia versus Bondi from this year, there was, again, this whole host of evidence of effectively two families feuding. That's what separates those cases from this case, where at bottom, we don't fully know what the criminals were interested in other than money and to expand their criminal racket. And if there are no further questions. Thank you, Mr. Hubanks. Thank you, Your Honor. Ms. Aguilar, we'll go back to you now for rebuttal argument. Thank you, Your Honors. A couple of points of clarification, especially around the question raised by opposing counsel regarding how much Ms. Quiroz Bardales needs to know about the underlying motive. In a family unit-based asylum application, the actual victim does not have to be privy to the original crimes or any grudges that are against the family members. This is case precedent both by the Board of Immigration Appeals and also this court. One of the cases, Elias v. Zacharias, is clear that the victim does not need to know the explicit motives for why they are being targeted. There does, however, need to be some motive that is on record in order for this to be recognized. And in this case, her credible testimony of what the attackers themselves said is sufficient to establish motive beyond mere, they saw a woman in the street and grabbed her purse. So this is why, ultimately, the judge finding that her testimony was credible, that what she says the men said to her when they approached, this was taken as truth and fact, which creates the legal contradiction. If what she said is true, and this was the men's motive, they were looking for her husband and had issues with him, that then she suffered an attack as a proxy for. They attacked her because they were mad at him. For whatever reason, she doesn't need to explicitly know. Then the case cannot be, this testimony can't also be brushed aside as, oh, she was just a victim of crime, because the testimony itself stands to establish that she was not. Thank you, Ms. Aguilar. Do you have another point? I will only call out that some of the cases that the opposing counsel did reference, they almost exclusively granted, at the appellate level, remand back to the immigration court in many ways because either the nexus was established or other parts of the asylum claim unique to those cases were not effectively delved into by the immigration judge. One specifically, Mejia Hernandez v. Bondi, which was just recently decided in the last year or so, was a family-based victim violence case. This circuit remanded back because the judge did not accurately look at the nexus between family membership and the crime that happened. It does not have to be the only reason, which we believe the immigration judge determined in his holding. Because she was robbed, oh, it can't be family-based violence. And that discredits the fact that these men were looking for her husband and hit her over the head and hardened up to hospitalize her because of it. Thank you. Thank you, Ms. Aguilar. Thank you, Mr. Hubanks. The case will be taken under review. Thank you.